UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

STEPHEN J. LEMELIN,

Defendant.

Case No. 24-cr-10164-PBS

**UNITED STATES' SENTENCING MEMORANDUM**

I.  **Introduction**

The Defendant, Stephen Lemelin, stands convicted by a jury of sending three photographs of his erect penis to someone he believed to be a fourteen-year-old child.  But his culpability far exceeds these three discrete acts.  At bottom, the Defendant attempted to manipulate a child for sexual gratification.  As an adult man approaching 50 years of age, he entered a chatroom for teenage girls and *initiated* contact with one named Kiley Quinn.  He pursued her relentlessly for five months: from May to October, from the end of her freshmen year to the start of her sophomore year, and throughout her summer vacation in between.  He sent hundreds of messages of ever-increasing vulgarity and aggression. The jury and bench suffered to see and hear those messages; they needn't be belabored here.  But lest there is doubt: never *once* did Kiley reciprocate a sexual interest or solicit a sexual advance.  Just the opposite, she repeatedly expressed alarm, disgust and confusion.  The Defendant paid no heed to those consequences.  He pressed on and on, and—crucially—he did so for a specific reason which he explicitly admitted to under oath: to persuade Kiley, a child of 14 years, to have sex with him.

Mercifully, Kiley Quinn was an undercover police persona and there was no real child in this case.  That diminishes the harm.  It does not diminish the Defendant's culpability.  He intended

to sexually exploit a child and tried to do so. *That* is the conduct this Court must consider when fashioning an appropriate sentence. The government submits that conduct should be met with a (mid guideline) sentence of incarceration for 34 months and supervised release for three years.

**II.    Sentencing Guidelines**

The United States addresses three aspects of the guideline calculations: (i) the two-level enhancement for obstruction of justice under USSG § 3C1.1; (ii) the seven-point enhancement for the Defendant's intention to have sex with the putative minor under USSG § 2G3.1(b)(E); and (iii) a two-level adjustment for zero-point offenders under USSG § 4C1.1. The otherwise incorporates the facts and calculations set forth in the Presentence Investigation Report.

A.    Obstruction of Justice

The Court should apply a two-level enhancement for obstruction of justice. Every Defendant has an absolute constitutional right to choose whether to testify in his defense. But no one has a right to offer perjury. The USSG reflects this principle by providing a two-point enhancement when the record establishes by a preponderance of the evidence that the Defendant committed perjury or, at least, provided materially false information to a judge. USSG § 3C1.1, Application Note 4(B) and (F). "Perjury consists of false testimony under oath concerning a matter material to the proceeding, as long as the testimony is given 'with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Shinderman*, 515 F.3d 5, 19 (1st Cir. 2008) (quoting *United States v. Dunnigan*, 507 U.S. 87, 92-94 (1993)). "Material" information is that which, "if believed, would tend to influence or affect the issue under determination." USSG § 3C1.1, Application Note 6.

Here, the Defendant lied under oath with the intent of influencing the court and jury.[1] Specifically, he (i) denied deriving sexual gratification from his conversations on Kik and (ii) denied believing that Kiley was a child. It is abundantly clear *why* he would issue these denials under oath: he wanted to avoid a conviction. Yet it is equally clear that these denials were not an exercise of the right to testify or claim legal innocence, but calculated and factual untruths.

Again, the court needn't revisit all the messages (although virtually every page of the 260-page exhibit revealed either explicit or implicit—but always unambiguous—references to the child's age). Nor does the court need to address the fact that this Defendant's phone contained multiple images and a video of child pornography (although that child pornography must have been displayed on his phone in some manner, indicating the Defendant at least accessed corners of the internet where this material is shared). *See* Dkt 85, *Government's Supplemental Opposition to Defendant's Motions in Limine*, at 4-5. Nor even does the Court need to parse the obvious inconsistences in the Defendant's testimony, for example both (i) denying sexual gratification from messaging on Kik while (ii) admitting he was on Kik specifically to satisfy sexual desires unmet by his disabled wife (although those inconsistencies are glaring evidence of untrustworthiness).[2]

---

[1] The transcript of the Defendant's testimony is available at ECF No. 103 and will hereinafter be quoted by reference to "Tr."

[2] *Compare, e.g.*, Tr. 18:14-19 (Q: "Was your wife aware that you were engaging in these communications on Kik?" A: "At the time – my wife is currently disabled, and at the time our sex life got impaired by that. **So she knew that I was online to try to – to supplement – not supplement but get something to help my needs per se** …"), *with* Tr. 7:9-8:2 (Q: "Okay, can you give some examples of some role play scenarios that you engaged in with other individuals on Kik." A: "Yes, but -- okay, with one I was a 25-year-old Asian cuckold. Another I was a 40-something female hot wife. Another I was a gay subordinate to a male dom." Q: "Are any of those accurate reflections of you, of your interests?" A: "**No, no. I'm one hundred percent heterosexual and happily married with my wife. Those are just other people's fantasies that I was seeing where they'd end up.** […] Q: "And, again, excuse me if I -- were you always interested in these scenarios?" A: "**No.** The one scenario I was interested in, that I wouldn't act

Rather, the court needs only to recognize the immutable fact that a jury of 12 unanimously determined that the Defendant believed he was speaking to a child *beyond a reasonable doubt.* Where the government needs only to show *by a preponderance* that the Defendant was lying when he denied subjective belief in the putative child's age, the jury's determination of that perjury by a much higher standard—the highest standard—must suffice to carry that burden.

Finally, the Court should not entertain any notion that the Defendant was merely confused or unsure of who he believed Kiley to be, such that his testimony evinces confusion or otherwise falls short of perjury. The jury foreclosed that option (because the evidence foreclosed that option). His conversation with Kiley was not transitory; it was doggedly persistent. Her young age was not peripheral to the conversation; her young age was the *very reason he was deriving sexual pleasure from messaging with her. See, e.g.*, Tr. 44:21-23 (Q: "Okay, what about this? 'Have you sucked one yet? **You practicing on me is kinky, LOL**.' You wrote that, didn't you?" A: "Yes."). And the tone of his testimony was not one of confusion or uncertainty born of embarrassment or contrition or faulty memory. The lie was calculated to avoid responsibility, and the Defendant chose that tact with shocking boldness. Recall the following exchange:

Q: "What is this 'Verynicelyhung8'? What is that?"

A: "That is my account name that I had to put in when I entered – entered the Kik app."

Q: "And you chose Verynicelyhung8; isn't that true?"

A: "Yes."

Q: "And that was a reference quite clearly to the size of your penis?"

---

on because it would violate my marriage, but the one that interested me was being a bull for a cuckold and their hot wife. That I found far more interesting.") (emphases added).

A: "Yes."

Q: "What does the 8 in that name signify?"

A: "That's my favorite number."

Q: "Oh, sir, is it not what you were boasting about the size of your penis?"

A: "No. 8 is my favorite number."

Q: "So Verynicelyhung8, the 8 has nothing to do with your perceived size of your penis? Is that your testimony?"

**A: "It would have said 'Verynicelyhung9' if I were to do that, sir."**

Q: "Well, actually, sir, in one of your messages to the 14-year-old, you actually said 'almost 9.' Isn't that true?"

**A: "I was rounding up."**

Tr. 23:17-24:8 (emphasis added). That testimony—*i.e.*, bragging about his penis in open federal court, under oath, in his criminal defense—is not reflective of demurral or wavering hesitation about the truth. It is reflective of brazenness. And brazenness is reflective of defiance of truth, not confusion.

In short, the Defendant believed he was speaking to a child, yet he chose to lie under oath in a failed gambit to manufacture reasonable doubt in the minds of the jury. The appropriate consequence is a two-level enhancement under USSG § 3C1.1 and Application Notes 4(B) and (F).

B. <u>Intent to Engage In Prohibited Sex Act</u>

The Court should apply a seven-point enhancement because the offense involved distribution to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct. *See* USSG § 2G3.1(b)(E).

5

As already explained, the jury's verdict removes any reasonable doubt that the Defendant believed he was speaking to a child.  Thus, as to this enhancement, the only question is whether he also intended to induce that child to have sex with him.  To know that he did, the court needs only to consult the Defendant's own words—both in his messages to Kiley, and while on the stand.

First, the messages.  As trial Exhibit 1 made exhaustingly clear, the Defendant's messages with Kiley escalated over the five-month dialogue.  As the months went on, they reached the point of the Defendant actively planning to meet her for sex.  The court will recall the overall tenor and theme of the conversation, which incessantly discusses and anticipates the minor performing unlawful sexual acts with the Defendant.  But the exchange exceeded mere abstract hypothetical; it grew to planning a physical meeting and avoiding being caught.  Consider the following examples (each page reference is to trial Exhibit 1):

- Pages 107-108 (the Defendant asking Kiley if she wants to have sex, that he would have sex with her despite her age—*i.e.*, "if you would I might"—Kiley explaining she doesn't drive, and the Defendant stating he is "nervous" about being caught):



6

- Page 170 (Kiley suggesting the Defendant could come over and bring alcohol, and the Defendant ageeing it "would be good night to chill with rents [parents] out"):



- Page 227 (the Defendant discussing Kiley pretending to be sick to stay home from school so he can "come ova," Kiley discussing her parents' schedule and when she'd be alone, and the Defendant stating "we can plan it out then"):



- Page 229 (the Defendant lamenting that "we coulda" when told by Kiley that she

  had a half day at school):



- Page 233 (the Defendant and Kiley discussing her ditching school, and the

  Defendant stating: "I don't think I can but maybe I can free up tmro."):



- Page 245 (the Defendant instructing Kiley to "ditch when they're [parents] out n I can come."):



The Defendant may claim these were fantasies without correlative intent to act upon them in the real world.  The Court should place more emphasis on the actual messages—*i.e.* the things the Defendant said and planned while believing he was covert—than on self-serving denials now.

Second, the testimony.  Even if the Court harbors doubt about whether the messages above sufficiently graduated to the level justifying the USSG § 2G3.1(b)(E) enhancement, then it should simply credit the Defendant's moment of sincerity while testifying.  It is true he denied "grooming Kiley Quinn so that [he] could meet her for sex."  But in an unguarded exchange, he also admitted the following:

Q: "Sir, you were trying to convince Kiley Quinn to have sex with you, weren't you?"

(Witness pausing.)

Q: "Shall I repeat the question?"

A: "No. **Yes, I was**."

Tr. 54:11-15 (emphasis added).  Of course, the Defendant's having sex with a fourteen-year-old girl would be a "prohibited sexual act."  Accordingly, the Defendant's admitted purpose in speaking with her—to "convince" her "to have sex" with him—militates for the seven-level enhancement for persuading or inducing a child into prohibited sexual conduct.[3]

C.  Zero-Point Offender

The government's position is that the Defendant qualifies for the two-point zero-point offender deduction.  *See* USSG § 4C1.1.  Although that deduction does not apply if the offense of conviction is a "sex offense," the term "sex offense" is defined as offenses arising from Chapters 109A, 110, 117; offenses arising from 18 U.S.C. § 1591; or attempts or conspiracies to commit any of these offenses.  The Defendant stands convicted under 18 U.S.C. § 1470, which arises under Chapter 71—not Chapters 109A, 110, or 117.  The Defendant otherwise meets the remaining criteria in USSG § 4C1.1.

D.  The Government's Proposed Offense Level Computation

In sum, the government submits:

- The base offense level is 10;

- There is a two-level enhancement for use of a computer (USSG § 2G3.1(b)(3));

-  There is an applicable two-level deduction for zero-point offenders (USSG § 4C1.1);

- There is a seven-point enhancement for attempting to induce a child to engage in prohibited sexual conduct (USSG § 2G3.1(b)(E)); and

---

[3] If the Court does not apply the seven-level enhancement under USSG § 2G3.1(b)(E), it should nonetheless apply the lesser included five-point enhancement at USSG § 2G3.1(b)(C), because there can be no doubt that the Defendant did distribute obscene material to a minor as defined in Application Note 1.

- There is a two-level enhancement for obstruction of justice (USSG § 3C1.1 and Application Notes 4(B) and (F)).

The above yields an adjusted offense level of 19.  Because the Defendant is in Criminal History Category I, the government submits that the Defendant's advisory guideline sentencing range is 30-37 months.

### III.    The Section 3553 Factors

In consideration of all the Section 3553 sentencing factors, the government submits that a mid-guideline sentence of 34 months is just and appropriate.  A few of the particularly relevant factors are discussed below.

***The nature and circumstances of the offense***.  As made evident at trial, the Defendant is not merely guilty of sending three obscene photographs to a putative child.  He is guilty of a crusade to sexually exploit a child who repeatedly expressed naivete, alarm, confusion and disgust at his advances.  He—a father and high school coach—exploited a child's insecurity, vulnerability and emotional/social development.  It bears repeating that the undercover officer operating as Kiley never advanced the sexual dialogue.  Kiley did the opposite.  Kiley talked about homework, parents, school, field hockey, food, and funny internet memes.  In turn, the Defendant aggressively touted his perceived penis size and graphically discussed anal, oral, and vaginal sex with her (and with a different thirteen-year-old girl and that girl's mother).  And he pressed this lurid agenda even while she would express feelings of embarrassment, insecurity and attachment.  Consider the following exchange on pages 181 and 182, where Kiley confides that she mostly only talks to the Defendant and sometimes feels "used":

**Defendant**: "Lol well you don't show much interest."

**Kiley**: "I am jst biz or hv rents around a lot

11

Plus in schl all day lol

Not 4 nothin but u r the boy i talk to the most ya know

We been tlkin for mnths. Ur nice 2 me. i hv feelings ya know n i tell you stuff

U think i am crazy??"

**Defendant**: "Oh well I'm honored haha"

**Kiley**: "I kno but sometimes i feel used"

**Defendant**: "Yes we have"

**Kiley**: "🙁 "

**Defendant**: "Used?"

**Kiley**: "Idk not used but jst like i like u

So used 2 talkin to u all the time its a normal thing"

**Defendant**: "If I wasn't nervous about age ……"

**Kiley**: "Bcse i am 14 n ur r old?"

**Defendant**: "Lol."

Or this, on page 188, where Kiley concedes vulnerability in "opening up" to the Defendant and the Defendant encourages her to do so:

**Kiley**: "Oh ok will fingers hurt?"

**Defendant**: "Not unless I use 3 or 4 of them haha."

**Kiley**: "ahhhh no lol"

**Defendant**: "My finger is prob size of a boys dick ur age lol"

**Kiley**: "Ur prob right"

**Defendant**: "Will be so much easier to handle than mine after you're used to mine"

**Kiley**: "omg I cnt believe we r actually talking bout this lol"

12

**Defendant**: "Lol. You don't want to?"

**Kiley**: "I jst cant believe that i am opening up 2 u like this. Its chill"

**Defendant**: "It's chill I agree."

Or that before he sent the third obscene photograph charged in Count III, he demanded that she

first ask for it (pp. 234-238), concluding as follows:

**Defendant**: "Why would I send ?"

**Kiley**: "Do u kno how hard it is bein a 14 yr old girl these days?? With social media n

stupid people at schl??? Now i hv 2 ask to see ur thingy … lol

Yeah i guess ur right u always so nice to me"

**Defendant**: "I am. But asking isn't a big deal is it?"

**Kiley**: "Jst weird but its kk

 "

**Defendant**: "Not weird"

**Kiley**: "ok let me hv it if ur dyin 2

 "

**Defendant**: "Lol

Stop saying it funny ways"

**Kiley**: "Sorry hun

Dnt b mad  "

**Defendant**: "What it's ok … u can't just ask tho?"

**Kiley**: "Cuz i am insecure ant it n i feel like its wring asking u to show ur thing

Can u please show me ur thing?

13

Haha

I caved lol"

The Defendant then sent a third photograph of his erect penis stating: "This IS so hard." Kiley responded, in part: "Jesus my face is so red right now." Which was little different than her response when he sent the first photograph of his erect penis five months earlier: a vomiting "emoji," expressing shock and disgust. The point is that the Defendant's conduct extends beyond mere transmission of obscene material. Considering the nature and circumstances of his offense requires confronting the fact this Defendant decided to take advantage of what he thought was a child and a child's particular vulnerabilities. That is a serious crime worthy of a substantial punishment.

   ***Adequate deterrence to criminal conduct***. It is a great mercy that no actual child was hurt in this case. But there is a reason the law draws no distinction between sending obscene material to an actual child or an undercover offer pretending to be one, and why the sentencing guidelines defines a "minor" as an "undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years." USSG § 2G2.1, Application Note 1. That reason is because the underlying criminal *intent*—in conjunction with a willingness to act in accordance with that intent—is extremely dangerous to children. Had Kiley in fact been the insecure fourteen-year-old freshman the Defendant believed her to be, he would have caused that girl irreparable harm. The Court knows all too well there often *is* a real child on the other side of these all-too-common conversations. The sentence must clearly reflect the serious nature of the Defendant's actions in clear view for others who may falsely believe there's no harm in sexualized online dialogue with children. Any deviation below the guideline range would risk sending that precise and dangerous message.

14

***The history and characteristics of the defendant***.  The government acknowledges the Defendant is a husband to a disabled wife and a father to a young child.  They are lamentable victims of the consequences of the Defendant's actions.  The government further acknowledges this Defendant has no criminal history.  The government's recommendation takes these facts into account by suggesting a sentence not only within the guidelines but modestly below the high-end, which the Defendant's conduct and defiant, perjurious testimony would otherwise merit.

***Provision of correctional treatment in the most effective manner***.  The Defendant quite clearly struggles with compulsive and deviant sexual behavior.  That much was made clear in his messages with Kiley.  But the Court will also recall his testimony about his myriad "cuckholding" fantasies and other apparently uncontrolled impulses. Moreover, it bears repeating that the government's forensic examiners found images and a video of child pornography on the Defendant's phone, indicating at the very least that those images and video were displayed on his personal device at some point.  The Defendant will be required to register as a sex offender because of the verdict.  The government submits it is imperative that the Defendant also be afforded sex offender treatment while incarcerated in hope of arresting the escalating course of conduct that led to this case.  The government has been advised by BOP staff at FMC Devens that the treatment program for sex offenders generally takes about 18-21 months to complete once an inmate is admitted;  that there are sometimes waitlists to get into the program; and that inmates are generally admitted to the program about 2-3 years before their project release date.  The government's recommendation reflects an estimated minimum time to allow the Defendant to successfully enroll and complete the treatment program and thereby commence supervised release and eventual total reintegration with maximum chances of success.

## IV.   <u>Conclusion</u>

Thirty-four months of incarceration followed by three years of supervised release is a sentence sufficient, but not greater than necessary, to accomplish the goals of federal sentencing.

Dated: March 13, 2026                              Respectfully submitted,

LEAH FOLEY
United States Attorney

*/s/ Eric L. Hawkins*
David Tobin
Eric L. Hawkins
Assistant United States Attorneys
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210
david.tobin@usdoj.gov
eric.hawkins@usdoj.gov
617-748-3392
617-748-3299

## CERTIFICATE OF SERVICE

I certify that the foregoing document will be served on all parties through the Court's CM/ECF system March 13, 2026.

Dated: March 13, 2026                              */s/ Eric L. Hawkins*
                                                    Eric L. Hawkins